IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WALNUT HILLS-GREENVILLE AVE, LLC | Case No. 24- 31485 |
| Debtor. | |

**INITIAL OBJECTION TO CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER: (I) APPROVING PROCEDURES FOR THE SALE OF PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (II) SCHEDULING AN AUCTION; (III) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES; (IV) APPROVING FORM OF NOTICE; AND (V) GRANTING RELATED RELIEF AND APPICATION TO EMPLOY JONES, LANG, LASALLE**

[Docket No. 97 & 99]

COMES NOW, Zoo Real Estate Holdings, LLC ("Zoo"), a party in interest, and files this Initial Objection to the: Chapter 11 Trustee's Motion for Entry of an Order: (I) Approving Procedures for the Sale of Property Free and Clear of All Liens, Claims and Encumbrances; (II) Scheduling an Auction; (III) Approving Assumption and Assignment Procedures; (IV) Approving Form of Notice; and (V) Granting Related Relief (the "Motion")[1] and Application to Employ Jones Lang Lasalle (the "Application"), and would respectfully show as follows:

**PRELIMINARY STATEMENT**

1. The Motion and Application should be denied because they seek approval of a "fire sale" process that will result in the loss of hundreds of jobs, displace hundreds of patients, and destroy tens of millions of dollars of value, all to benefit a grossly over secured creditor and generate millions of dollars of unnecessary professional fees. A written refinancing option for the

---

[1] Zoo will supplement this Objection upon completing its review and analysis of the Trustee's Response to Zoo's Request for Production of Documents that were due on October 25, 2024, at 12:00 p.m. As of the time of this filing, the documents had not been produced. Zoo files this initial Objection in order to notify the Court and other parties in interest that the Motion and the related Application to Employ JLL are contested and is not in the best interest of the Debtor or other key stakeholders.

Property has now emerged which will provide for payment of all the claims in full. Critically, the refinance will preserve forty million of dollars of value and assure that hundreds of jobs are preserved. Accordingly, the Motion an Application should be denied.

## SUMMARY OF FACTUAL BACKGROUND

A. The Purchase of the Property.

2. The Debtor owns the real property and improvements located at 7502 Greenville Avenue in Dallas Texas (the "Property"). The Property includes an eight-story building and four-level parking garage.

3. This should have been a straightforward case. But for the reasons explained herein, it has become complicated.

4. The Debtor is part of the larger group of healthcare companies commonly referred to as Advanced Diagnostics Healthcare System. Zoo is the sole equity holder of the Debtor.

5. The Debtor purchased the Property in 2020 for approximately $23 million. The Property had been vacant and shuttered since 2017. Although the shell of the Property was in good condition when purchased, all equipment and had been removed.

6. On or about December 1, 2020, the Debtor entered a commercial lease (the "Lease") for the Property with Advanced Dallas Hospital & Clinics, LLC ("Advanced Dallas" or the "Tenant"). The primary purpose of the Lease was for the build-out of the Property and to open an acute care hospital (the "Hospital"). Advanced Dallas is similarly part of the Advanced Diagnostics group of companies.

7. As this Court is likely aware, the capital costs and licensing requirements involved in opening a hospital are significant and challenging and were ever more difficult during the height of the Covid 19 pandemic. Nevertheless, through much effort and the significant capital expenditures, the Tenant received its first license and permission to open the Hospital on March

16, 2021.

8. Over the next three and a half years, Advanced Dallas gradually completed and gained additional (time consuming) accreditations, licenses for specialty care, and entered into contracts with insurance companies to be in network providers. For example, after years of efforts, most recently in September 2024, Advanced Dallas became active with United Healthcare. The Tenant has now stabilized based upon completing its diversity of payor mix to include Medicare, the Department of Labor, traditional commercial insurance, direct to employer health plans, personal injury, state workers compensation and shared ministries health plans.

9. Regardless, challenges remained. Advanced Dallas just received its Medicare license number. Medicare will be an important component of the Tenant's operations because within a five-mile radius of Advanced Dallas are approximately 30 long term care facilities (nursing homes, assisted living, and independent living) with an estimate of over 6000 persons served. Advanced Dallas has created a Senior Services outreach program for this population as it is an ideal acute care hospital to address the needs of this population. In fact, through much effort, the majority of the long-term care facilities have or are in the process of signing a transfer agreement with Advanced Dallas. Senior services will include emergency room visits, admissions for acute illness, limb salvage/wound care, slips & falls, etc.

10. After all the significant capital commitments, work and improvements, the Hospital now consists of a 199,182-square foot acute care hospital with a total of approximately 100 beds and 84 private patient rooms, an ICU, six operating rooms, two cath labs, an imaging center, pharmacy, lab, emergency department, commercial kitchen and a vacuum tube system connecting the nurse stations to the lab, pharmacy and emergency department. Even though the Hospital is a new venture, Advanced Dallas enjoys a high rating by its patients and communities served. Indeed, the Hospital is among the highest rated in the Dallas/Fort Worth area.

11. The Hospital, either directly or indirectly, employs over 230 members of the Dallas community. The dedicated group of employees rely on the Hospital to meet their personal and family obligations.

12. Based upon the foregoing efforts, the value of the Property has increased from $23 million in 2020 to an estimated $68,000,000 today. The trustee seeks to implement a fire sale procedure and threatens to sell the Property for as little as $23-24 million, an amount only sufficient enough to pay UTB (as described below) and property taxes, evict the Tenant, and cause the loss of hundreds of jobs and evaporate $40 million of equity.



B. Financing with United Texas Bank

13. On March 16, 2022, the Debtor and United Texas Bank ("UTB") entered into a loan agreement whereby UTB loaned the Debtor $25,000,000 secured by the Property (the

"Loan").

14. UTB is a small bank with four offices located in Dallas / Ft. Worth. It is privately owned and controlled by its founder and his family (the "UTB Family"). The UTB family is involved in multiple ventures, including healthcare. The Debtor was introduced to UTB by a healthcare company owned by the UTB Family that had entered into an agreement with the Tenant to provide drug treatment / detoxification services (the "Detox Facility") at the Hospital. The Loan, in part, was facilitated by the prior business relationship between the UTB Family and the Hospital. The Detox Facility and UTB have the same CEO.

15. The terms of the Loan required interest only payments for a period of 2 years and then continuing principal and interest at 4.25% through March 2027, after which interest is adjusted based upon the prime rate every five years for a 20-year term. From the Debtor's perspective, the timing of the 20-year Loan in March 2022 was optimal. On the other hand, because the federal funds effective rate went from .33% in April 2022 to 5.33% in August 2022, for a small lender, the Loan and fixed interest rate at 4.25% for five years could have been viewed as an albatross.

16. As part of Loan, UTB required a Certificate of Deposit of $4,000,000 be pledged and held in escrow at UTB from the Debtor. It was the Debtor's understanding that the $4 million escrow was to be used to pay property taxes.

17. Meanwhile, due to no fault of the Hospital, the Detox Facility (apparently) began having regulatory and compliance problems. Attempts to reconcile the problems produced no results. As a result, the business relationship between the Hospital and the Detox Facility deteriorated and became untenable. The relationship ended poorly, and the Detox Facility and UTB Family (incorrectly) believed that the Hospital was the source of an apparent whistleblower

complaint.[2] Feeling burned by the Tenant, UTB vowed revenge and took an unreasonable and uncooperative position by refusing to respond to a 2022 audit request letter related to the Loan. The audit request letter was a simple form that was required to be returned to the auditors of Advanced Diagnostics to complete the 2022 audit for Advanced Diagnostics. Due to UTB's (unreasonable) refusal to respond to 2022 audit request letter, the auditors could not issue an unqualified audit opinion for 2022, which caused (and continues to cause) significant problems for the Debtor and entire Advanced Diagnostic business enterprise. Moreover, JLL disclosed on October 24, 2024, that it has ongoing business relationships with the UTB Family group of companies (who are clearly adverse to the Debtor). All things considered, such a relationship is problematic for the Debtor's estate and raises questions of whether JLL is disinterested.

18. On March 8, 2024, even though the Debtor had made all required monthly Loan payments to UTB, UTB accelerated the Loan due to non-payment of property taxes on the Property and the recording of a $3,400 mechanics lien by a service provider of the Tenant. UTB posted the Property for an April 1, 2024, foreclosure sale.

19. On March 29, 2024, UTB swept $4,416,317 of proceeds from the Debtor's certificate of deposit and cash on deposit with UTB.

C. The Chapter 11 Case.

20. To avoid a complete loss, the Debtor filed this Chapter 11 case on April 1, 2024.

21. The Court is aware of the procedural history of the case. From nearly the beginning of the case, the case suffered from inattention and inaction. General counsel for Advanced Diagnostics was the primary point of contact for the Debtor's bankruptcy counsel when the case was filed. He left Advanced Diagnostics in mid-May 2024, and his successor did not begin until

---

[2] The Tenant has since been informed that the whistleblower complaint was allegedly filed a former employee of the Detox Facility that resulted in a governmental investigation.

June 21, 2024. The Debtor's management believes that its outside bankruptcy counsel was non-responsive, provided bad advice, and mismanaged the case. From Zoo's investigation, the hearing that resulted in the appointment of a Chapter 11 trustee should have never occurred, and to make matters worse, the Debtor's witness was unprepared for the questions presented. To complicate matters even more, on or around the same day that the Court appointed a Chapter 11 trustee, Debtor's bankruptcy counsel was suspended from practicing before this Court, leaving the Debtor without key bankruptcy counsel in a critical moment. The Court exercised discretion in appointing a chapter 11 trustee rather than converting the case to chapter 7. Zoo believes that the Court's discretion was valid, and if the Court believed an immediate liquidation of the Property was in the best interest of the estate and all the stakeholders, the Court would have appointed a Chapter 7 trustee to liquidate the Property.

22. To add further injury, during the pendency of this Chapter 11 case, UTB filed a lawsuit against Dr. Atul (Lucky) Chopra in Dallas County for alleged breach of his personal guarantee of the Loan and obtained a $22,934,312 default judgment against Mr. Chopra on September 19, 2024 (the 'Default Judgment"). UTB asserted that it served Mr. Chopra via text message and email, and by all appearance tried to avoid actual service of process. Upon discovery of the Default Judgment, Mr. Chopra filed a Motion to Set Aside the Default Judgment with the Dallas County Court. However, the Dallas County court's first available hearing date is December 5, 2024 (which is the same day as the Chapter 11 trustee's proposed auction of the Property). A copy of Mr. Chopra's Motion to Set Aside the Default Judgment is attached hereto as Exhibit A. As this Court may expect, the existence of the Default Judgment has further complicated and slowed down attempts to reorganize and refinance the Property.

23. The Debtor and its affiliates have worked diligently over the past six weeks to "right the ship." Specifically, (i) the Debtor's representative prepared and submitted Amended MORs for

April and May 2024 (using the correct form), and submitted MORs for June, July, August and September, (ii) the Tenant has paid $1,102,231.67 in post-petition rent, including October rent of $290,474.00, (iii) the Tenant is prepared to pay an additional $290,474.00 for November rent; and (iv) the Property is fully insured and well maintained. Under no circumstances should the Property be auctioned off in a fire sale.

24. On October 24, 2024, the Gold Quest Group submitted a proposal to refinance the Property. The refinance will save hundreds of jobs, eliminate millions of dollars of unnecessary professional fees, and be in an amount sufficient to pay the creditors in full. Zoo has prepared and is filing a Plan of Reorganization to pursue the refinance with Gold Quest Group, which will pay all creditors in full.

## OBJECTION TO BID PROCEDURES AND APPLICATION TO EMPLOY

25. A chapter 11 trustee is a fiduciary with an obligation of fairness to all parties in the case.[3] In this case, the procedures proposed by the trustee are not in the best interest of the estate, the Debtor or other stakeholders in this case. The only parties that will benefit will be UTB, the trustee and his professionals.

26. The trustee's proposed procedures are not commercially reasonable, cannot possibly meet any business judgement standard, let alone the fiduciary duty of a chapter 11 trustee. If approved, the trustee's procedures provide for a marketing and due diligence period of 33 days, an auction on the 35th day, an assignment and assumption of contracts noticing period of 1 business day, a cure objection deadline of 0 days, and sale objection period of 1 business day. In short, the procedures are designed to liquidate the Property to a low bid cash buyer, not rehabilitate and reorganize the Debtor. A chapter 11 trustee is obligated to protect and preserve estate assets, not

---

[3] U.S Department of Justice, Chapter 11 trustee handbook, pg. 6.

sell them off in a commercially unreasonable manner.[4]

27. Moreover, this is a single asset real estate case. There are no employees, and other than collecting monthly rent from the Tenant, there are no operations or other estate expenses associated with the Property. The Debtor's estate has over $1 million in the DIP account. To date, the Trustee represents to the Court that he is incurring between $114,500 and $95,000 a month in professional fees and in a period of less than 60 days, will have incurred professional fees in excess of $200,000.[5] It is not lost on Zoo that the Trustee is paying himself $40,000+ per month, his lawyer $40,000+ per month and UTB's lawyer $20,000+ per month. The Trustee is also seeking to pay JLL $200,000 even if a sale does not occur. Zoo objects to the reasonableness of all the fees and proposed fee structure contained within the Motion and the Application.

28. From an outsider's perspective, the Chapter 11 trustee's actions all focus on paying exorbitant professional fees and to try and block a refinance that would otherwise limit professional fees. For example, in the Motion the Trustee states:

> "…the Chapter 11 Trustee hereby asserts that any refinancing of the Building must be negotiated and finalized by the Chapter 11 Trustee, rather than through UTB, the Debtor's equity interest holders, and any other party."

29. The trustee's position is anti-competitive, works against a commercially reasonable outcome, and is a wrongful attempt to handcuff other stakeholders from preserving their interest in the Property. Although the trustee may claim to this Court that he is willing to allow for a refinance, his actions demonstrate that he only intends to liquidate the Property in a rushed sale.

30. Compared to other cases related to hospitals filed in the S.D. of Texas, the bid procedures are demonstrably unreasonable and will destroy the value of the Property. For example, in *In re Steward Healthcare*, Case No. 24-90213, after five months of pre-petition marketing, the

---

[4] Chapter 11 trustee handbook, pg. 19.
[5] See Doc. #86-2. Zoo reserves all of its rights to object to professional fees in this matter, including the reasonableness of the $100,000 a month in legal fees to three law firms.

chapter 11 debtors procedures ultimately allowed for over 100 days of marketing and due diligence, auctions largely did not occur due to lack of conforming bids, and then some sales closed to the landlord well beyond the 150 day mark; see also *In re Genesis Care Pty Limited*, Case No. 23-90614, bid deadlines were over 100 days after filing of bid procedures, with an auction ultimately occurring at day 121.

31. In this case, the trustee's proposed procedures are commercially unreasonable, drive down the value of the Debtor's only asset, and unnecessarily deplete the resources of the estate by millions of dollars of unnecessary professional fees. Accordingly, the Motion and Application should be denied.

## RESERVATION OF RIGHTS

32. Zoo Real Estate Holdings expressly reserves all rights to amend, modify, or supplement this Initial Objection, and to further object to the Motion and Application based upon information as it becomes available.

Dated: October 25, 2024

Respectfully submitted,

**ANDREWS MYERS P.C.**

*/s/ T. Josh Judd*
T. JOSH JUDD
SBN: 24036866
1885 Saint James Place, 15th Floor
Houston, TX 77056
Tel: 713-850-4200
Fax: 713-850-4211
jjudd@andrewsmyers.com

**COUNSEL FOR ZOO REAL ESTATE HOLDINGS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2024, a true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF.

*/s/ T. Josh Judd*
T. JOSH JUDD
